IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**HECTOR SOLANO MORETA**,

    Plaintiff,

    v.

**FIRST TRANSIT OF PR, INC.**,

    Defendant.

Civil No. 12-1989 (BJM)

## OPINION AND ORDER

Héctor Solano Moreta ("Solano") brings this action against First Transit of PR, Inc. ("First Transit"), alleging employment retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the "local counterpart of Title VII," and unlawful termination under Law No. 80 of May 30, 1976, 29 L.P.R.A. §§ 185a *et seq.* ("Law 80"). Docket No. 1 ("Compl."). Before the court is First Transit's motion for summary judgment as to the Title VII claim, Docket No. 50 ("Mot."), which Solano opposed at Docket No. 56 ("Opp."). First Transit also filed a reply (Docket No. 75). The parties consented to proceed before a magistrate judge. Docket Nos. 27, 28.

Also before the court are Solano's motion to strike certain exhibits (Docket No. 54)[1] and First Transit's motion to strike plaintiff's Exhibit 8 (Docket No. 72)[2]. To the extent discussed herein, Solano's motion to strike is **DENIED**, and First Transit's motion to strike is **GRANTED**. In light of the findings of fact and legal discussion set forth below, the summary judgment motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] First Transit filed an opposition at Docket No. 73.
[2] Solano's opposition is at Docket No 82. First Transit also filed a reply (Docket No. 84), and Solano tendered a sur-reply (Docket No. 85-1).

## BACKGROUND

This summary of the facts is guided by the parties' Local Rule 56 statements of uncontested facts. *See* Docket Nos. 50-1 ("SUMF"), 55 ("ASMF" at 13), 75-1.[3]

From 2003 through February 18, 2011, Hector Solano Moreta was employed by First Transit as a bus operator. SUMF ¶ 1, ASMF ¶ 1. First Transit is a corporation organized under the laws of Puerto Rico, where it provides mass transit services. SUMF ¶ 2. Julio Badia Hernandez ("Badia") currently serves as the General Manager of First Transit and has been in that role since 2005. SUMF ¶ 3. As General Manager, Badia is in charge of all operations in Puerto Rico, including employment and termination of personnel. SUMF ¶ 4. Katty Ayala is the Human Resources Director of Administration.[4] Docket No. 55-4.

Throughout his employment with First Transit, Solano was a member of the local Teamsters Union. A collective bargaining agreement ("CBA") governed the terms of employment between First Transit and union members. SUMF ¶ 10. Article XIII of the CBA provides that all disciplinary actions must be notified in writing, with a statement of the facts that support the action. ASMF ¶ 10. It also generally prohibits the employer from considering performance issues older than 12 months in making a disciplinary or

---

[3] Local Rule 56 requires parties at summary judgment to supply brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

[4] Solano moved to strike the supporting statements of Badia, Ayala, Beatriz Vidal, and Efrain Martinez on grounds that First Transit failed to disclose information regarding these subjects' knowledge of the case. Docket No. 54. First Transit claims that they provided this information on April 3, 2014, before the close of discovery. Docket No. 73, at 2. In any event, plaintiff presumably knew the identity of these four individuals, all of them being key First Transit employees involved in Solano's employment or termination. Aside from conclusory allegations of gamesmanship and trial by ambush, plaintiff failed to articulate any specific prejudice resulting from First Transit's alleged omission. Thus, this objection to the statements is overruled.

employment decision. ASMF ¶ 21. Article XIV of the CBA provides a grievance procedure for any issues that arise in the "interpretation of [the] collective bargaining agreement." Docket No. 68-2; SUMF ¶ 11.

*Solano's Performance Issues and Termination*

Between 2003 and 2008, Solano was issued numerous warnings, and was the subject of a number of passenger complaints and disciplinary actions. SUMF ¶¶ 13–29.[5] However, in October 2010, First Transit recognized Solano with an Exceptional Achievement and Performance Award for nine years of safe operation. ASMF ¶ 3. Troubles resumed shortly thereafter. On January 28, 2011, Beatriz Vidal, Safety Manager, received a complaint reporting that Solano was rude in answering a passenger's questions, and refused to let elderly passengers exit through the front door. SUMF ¶ 30. A few days later, on February 3, Solano allegedly refused to complete a bus route as directed by his supervisor, Efrain Martinez, and abandoned his post. SUMF ¶ 31. Solano denies Martinez's allegation of insubordination, and claims that he left work early that day because he did not feel well. On February 7, another passenger complained about Solano, claiming that he was rude and did not allow a passenger with walking difficulties to exit at the front of the bus. SUMF ¶ 32.

Two days later, on February 9, a coworker, José Angel Betancourt, filed an internal complaint against Solano, stating that Solano took photographs of him while at work, which made him feel uncomfortable. SUMF ¶ 33. That same day, a passenger complained that Solano was rude and offensive when asked a question about the bus route. SUMF ¶ 34. The next day, on February 10, Solano was involved in another

---

[5] Solano also seeks to exclude Badia's statements regarding prior disciplinary actions, claiming that they are materially inconsistent with Badia's deposition testimony. Docket No. 54, at 5. Upon review of the deposition excerpts cited by plaintiff, I fail to see how the statements are contradictory or contain wholly new information such that it must be excluded from consideration on summary judgment. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994) (noting that when an affidavit, offered at summary judgment, contradicts clear answers to unambiguous questions at deposition and does not explain the change in testimony, the contradictory affidavit may be disregarded).

incident with a passenger.  SUMF ¶ 35.  According to Vidal's report, Solano was rude and aggressive with passengers on the bus, got into a heated argument with one of the passengers, and then told all passengers to exit the bus.  Docket No. 68-80.  Solano rejects Vidal's version of the incident, and claims that a passenger instigated the incident by insulting him and calling him crazy.  It is undisputed, however, that Solano called the police, who arrived on the scene to deal with the incident.

A meeting was held at First Transit's office on February 11 to investigate the facts surrounding the February 10 incident.  Badia and Solano were present at the meeting, during which Solano was given a chance to present his version of the events.  SUMF ¶ 36.  Solano also informed Badia that he had filed a discrimination charge with the Anti-Discrimination Unit ("ADU") of the Puerto Rico Department of Labor during the meeting.  Later that day, Badia suspended Solano from work pending further investigation. SUMF ¶ 37.  A week later, on February 18, Solano was terminated.  SUMF ¶ 38.  The termination letter stated that the company primarily based its decision on Solano's act of insubordination on February 3, 2011.  Docket No. 68-27.  First Transit also took into consideration Solano's "extensive disciplinary file, which reflect[ed] serious attitude problems during the past years, and contain[ed] multiple written warnings, and even a prior suspension from employment and salary."  *Id.*  Article XIII of the CBA provides that insubordination is just cause for immediate dismissal.  Docket No. 60-1.

***Solano's Discrimination Charge***

On February 4, 2011, Solano filed a complaint with the Anti-Discrimination Unit of the Puerto Rico Department of Labor, alleging discrimination on the basis of national origin and retaliation.  SUMF ¶ 40; Docket No. 68-63.  First Transit received formal notice from the ADU that a charge had been filed on February 18.  SUMF ¶ 41. Approximately two months later, on April 13, 2011, Badia offered to modify the company's disciplinary sanctions from termination to a 42-day suspension, provided that

Solano "dismiss with prejudice" his complaint before the ADU.  ASMF ¶ 33; Docket No. 60-2.

On February 28, 2011, Solano filed a formal complaint for unjust dismissal with the union.  SUMF ¶ 45.  An arbitration hearing was eventually held in June 2012 to resolve this dispute.  The arbitrator issued an award to Solano, but this award was later vacated in September 2012.  SUMF ¶ 49.  On April 29, 2014, the union requested that Solano's case be rescheduled for a second arbitration hearing.  SUMF ¶ 50.

Solano brought this action against First Transit in December 2012.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).  On summary judgment, the court must find facts based on admissible evidence, and should disregard that which is "inadmissible at trial, such as inadmissible hearsay." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 33 (1st Cir. 1998).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1).  If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and

unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## DISCUSSION

First Transit argues that it is entitled to summary judgment because plaintiff cannot establish a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting framework. Mot. 5. In addition, it asserts that plaintiff's claim should be dismissed because Solano cannot show that retaliatory animus was the "but-for" cause of his termination, as required under *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Mot. 7. In response, Solano contends that it has direct and circumstantial evidence of retaliatory intent, sufficient to raise a genuine issue of material fact and precluding summary judgment for defendant.

Because the outcome of this case hinges in part on one document (plaintiff's Exhibit 8, Badia's letter to Solano on April 13, 2011), the admissibility of which is challenged in First Transit's motion to strike (Docket No. 72), I will first address the admissibility of the Badia letter and then turn to the merits of the case.

**I.     Badia's Settlement Offer Letter**

First Transit asserts that Badia's reinstatement offer letter to Solano on April 13, 2011 (Docket No. 60-2) is inadmissible under Rule 408 of the Federal Rules of Evidence as evidence of settlement negotiations or "compromise offers." Solano counters, claiming that the offer is admissible as it solely "related to a national origin discrimination claim that [he] filed with the ADU," and was not an offer to settle Solano's current claim of retaliation. Docket No. 82, at 2–3.

Rule 408 prohibits the introduction of settlement offers or statements made during settlement negotiations "to prove or disprove the validity or amount" of that claim at a later date. Fed. R. Evid. 408. However, such evidence is admissible for purposes other than to establish the claim's validity or amount. *Id.* Because the rule "is designed to encourage settlement negotiations after a controversy has actually arisen," *Hiram Ricker & Sons v. Students Int'l Meditation Soc.*, 501 F.2d 550, 553 (1st Cir. 1974), its applicability depends on "the timing of an offer and the existence of a disputed claim." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992); *compare Mundy v. Household Fin. Corp.*, 885 F.2d 542, 546 (9th Cir. 1989) (finding that the district court did not abuse its discretion in excluding a release agreement, where the offer was made three weeks after termination and plaintiff by then had retained counsel), *with Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1342 (9th Cir. 1987) (upholding introduction of employer's offer for severance pay in exchange for release of all potential legal claims, when offer was made at the time of employment termination). At the same time, Rule 408 is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions." *Scott v. Goodman*, 961 F. Supp. 424, 437 (E.D.N.Y. 1997). And a settlement offer may be used to show "an independent violation . . . unrelated to the underlying claim which was the subject of the correspondence . . . ." *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998). Ultimately, courts should eschew a strict reading of the word "claim," and apply Rule 408 in accordance with its purpose, barring settlement evidence so long as the legal claim in controversy arises out of the same transaction or event as the claims at issue during settlement negotiations. *See Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 (5th Cir. 2010) (citing *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 248 (1st Cir. 1985)).

The question in this case is whether Badia's letter was an offer to settle only the national origin ADU complaint filed prior to Solano's termination, or an offer to settle all of Solano's potential claims against his former employer, which would include the

retaliatory termination claim that is the subject of this litigation. The relevant facts are as follows: in Solano's February 4 complaint filed with the ADU, he alleged discrimination on the basis of national origin and retaliation. On February 11, First Transit suspended his employment. A week later, on February 18, he was terminated. Ten days later, Solano filed a formal complaint for unjust dismissal with the Teamsters Union. On April 13, 2011, Badia wrote to Solano, explaining that after discussions with Rafael Rosario, a union representative, "we have decided to reconsider the disciplinary sanction imposed and reduce it to a suspension from employment and salary, subject to, among other matters, that you dismiss with prejudice the complaint you filed with the Anti-Discrimination Unit." Docket No. 60-2.

Solano argues that this reinstatement offer pertained solely to his national origin discrimination claim before the ADU, and not his later retaliatory termination claim. Docket No. 82, at 2. To be sure, on the face of the ADU complaint and the Teamsters' complaint, Solano did not allege that his termination was motivated by retaliatory intent; and his current retaliation claim could not have arisen prior to termination on February 18. But the record also shows that by April 2011, Solano and First Transit had between them a concrete dispute on the propriety of his termination. Fairly read, Badia's letter of April 13, offering to reinstate Solano, provided that he withdraw the ADU complaint, constitutes an offer to compromise the entire dispute surrounding his termination.[6]

Moreover, admitting Badia's letter would contravene the policy rationale behind Rule 408, as it would discourage employers like First Transit from offering reinstatement or any other settlement to an employee whenever the employee has engaged in any form

---

[6] Solano's reference to *Zapata v. Univision P.R., Inc.*, 914 F. Supp. 2d 156, 176 (D.P.R. 2011), is misplaced. In *Zapata*, the offending e-mail constituting direct evidence of retaliation was written four months before the plaintiff's termination in August 2008, before the existence of any retaliation claim, and therefore could not possibly constitute evidence of settlement or compromise with respect to the plaintiff's retaliation claim. 914 F. Supp. 2d at 175 (e-mail constituting direct evidence of retaliatory intent dated April 17, 2008).

of protected activity, as the employee may use such compromise offers as evidence that the original termination was in retaliation for engaging in protected activities. While the letter is arguably probative of Badia's motivations for terminating Solano in the first place, given the "public policy favoring the compromise and settlement of claims," *McInnis*, 765 F.2d at 247, and the existence of a concrete wrongful termination dispute by April 2011, I find that First Transit's reinstatement offer was an attempt to resolve all of Solano's claims against his former employer, including his current allegations in this case. In sum, because Badia's letter is being proffered to prove the validity of a claim that was the subject of settlement, and not for any other purpose, Rule 408 renders the letter inadmissible, and the court will not consider it as evidence on summary judgment.

## II.     Title VII Retaliation Claim

Solano's first and only federal cause of action alleges unlawful retaliation in violation of Title VII. The anti-retaliation provision of Title VII makes it unlawful to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiffs asserting Title VII retaliation claims "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S. Ct. at 2534. It is not enough that retaliation was a "'motivating' factor" for the adverse employment action. *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014).

Title VII retaliation claims may be established through direct or circumstantial evidence. *DeCaire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008). In opposing summary judgment, Solano asserts the presence of both direct and circumstantial evidence of retaliation. I will consider plaintiff's two theories in turn.

### A.     Direct Evidence of Retaliation

A plaintiff may attempt to prove retaliation based on direct evidence that an adverse employment action was taken because of a prohibited animus. *See Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 64–65 (1st Cir. 2002) (explaining in context of discrimination claim). Direct evidence includes "[c]omments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 61 (1st Cir. 2000). On the one hand, the bare possibility of an innocent explanation for the statement does not make it any less direct. *Id.* However, "inherently ambiguous statements do not qualify as direct evidence." *Weston-Smith*, 282 F.3d at 65. For instance, a decisionmaker's "admission—that age was one of three criteria used, at least in some cases, to determine which employees would be retained and which would not . . . constitutes direct evidence" of age discrimination. *Febres*, 214 F.3d at 61. And in *Zapata v. Univision P.R., Inc.*, where the plaintiff's supervisor, in an e-mail, stated "I hope you reconsider the path you have chosen and try concentrating on your job duties, rather than your newfound claim," the court held that the statement could "fairly be read as indicating an intent to make a decision depending on what [the plaintiff] did with his discrimination claim." 914 F. Supp. 2d 156, 176 (D.P.R. 2011).

Solano's purported direct evidence of retaliatory intent consists of Badia's April 13, 2011 letter (Docket No. 60-2) and Badia's deposition testimony stating that he did not take into consideration Solano's disciplinary record from prior years in reaching the termination decision. First, Badia's April 13 letter is inadmissible for the reasons stated in the preceding section, and thus cannot constitute direct evidence of retaliatory intent. Solano's second argument also fails, in that Badia's deposition testimony does not fairly allude to the possibility that he dismissed Solano "based on forbidden criteria." *Febres*, 214 F.3d at 61. In his deposition, Badia stated that he did not consider incidents from prior years in deciding whether to terminate Solano. Badia continued, explaining that he

only took into consideration incidents near in time to the alleged insubordination on February 3. Opp. 6. I fail to see how this testimony is *direct evidence* that Solano's termination was the result of retaliatory animus, in that the testimony merely explains that Badia considered less than Solano's full employment record in reaching his employment decision. In short, I find Solano has presented no direct evidence of retaliatory intent sufficient to defeat summary judgment. Next, I turn to Solano's case based on circumstantial evidence.

### B.  Circumstantial Evidence – Prima Facie Case

A plaintiff relying on circumstantial evidence to establish retaliation is subject to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03 (1973). First, the plaintiff must establish a prima facie case of retaliation, showing that: (1) she was engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action. *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010). This is "a small showing that is not onerous and is easily made." *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003) (citation omitted). Once the plaintiff makes out a prima facie case, the defendant in turn must "articulate a legitimate, non-retaliatory reason" for the adverse action. *Collazo*, 617 F.3d at 46. At the third stage, the burden shifts back to the plaintiff to establish that the employer's proffered reason is mere pretext for retaliatory animus. *Id.*

For purposes of summary judgment, First Transit concedes the first two elements of plaintiff's prima facie case, but asserts that Solano cannot establish the third element of his prima facie case, namely, a causal connection between the protected conduct and adverse action. Mot. 5–6. First Transit's argument in this respect falls flat. The law on this point is pellucid: a showing of "temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation." *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008); *see also Collazo*, 617 F.3d at 49–50 (finding

temporal proximity of 11 days between first protected activity and termination sufficient to establish prima facie case).

Here, Solano has adduced sufficient evidence to establish temporal proximity between his protected conduct and termination. Solano filed a discrimination complaint against his employer with the Anti-Discrimination Unit on February 4, 2011. Solano notified Badia of the complaint on February 11. A week later, on February 18, he was terminated. The close temporal proximity between Solano's protected conduct and his termination is sufficient to meet the relatively light burden required to establish a prima facie case.

### C. Legitimate, Non-Retaliatory Reason and Pretext

Next, I find that First Transit has met its burden of articulating a legitimate reason for terminating Solano, namely, his performance and attitude issues immediately prior to February 18, 2011. The record shows that Solano had been the subject of a number of passenger complaints in the weeks leading up to his termination. In addition, his supervisor, Efrain Martinez, reported that he was insubordinate on February 3, when he refused to drive a bus route as instructed and left work that day without approval. A week later, on February 10, Solano became embroiled in a heated argument with a passenger, which resulted in police involvement. The company conducted a hearing to investigate this last incident, and a week after, decided to formally end Solano's employment.

Because the defendant has met its burden of articulating a legitimate, non-retaliatory reason for adverse action, *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 221 (1st Cir. 2007) (employer's burden is one of production, not persuasion), the burden shifts back to Solano to demonstrate that the company's reason is mere pretext cloaking retaliatory animus. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory

reasons." *Gómez-González v. Rural Opportunities, Inc.*, 626 F.3d 654, 662–63 (1st Cir. 2010).

On this record, I find that Solano has failed to raise a genuine issue of material fact, such that a reasonable jury could find that First Transit's alleged reason for dismissal is mere pretext. First, Solano points to inconsistencies in Badia's statements as evidence that Solano's performance problems were not the true reason for his termination. Opp. 13–14. In the formal termination letter dated February 18, Badia stated that the company's decision was based on his insubordination incident on February 3, as well as Solano's "extensive disciplinary file," showing "serious attitude problems during the past years." Docket No. 68-27. During his deposition, however, Badia disclaimed any consideration of Solano's employee records from prior years in deciding to terminate employment. Docket No. 55-2, at 31–32. He explained that he only considered incidents near in time to the insubordination incident when deciding to terminate Solano. While Badia's later deposition testimony is in some sense inconsistent with the original termination letter, it is not wholly divergent from First Transit's asserted rationale for terminating Solano's employment. Badia consistently maintains that he based his decision on Solano's performance issues, and it matters little, for present purposes, whether he took into account all incidents from the beginning of Solano's employment, or whether he only looked to incidents from around the time of termination.[7]

Solano also argues that Badia's failure to follow the CBA's procedures on disciplinary actions (Article XIII) is evidence of pretext. Specifically, Solano argues that Badia violated the procedures set out in the CBA by (1) considering disciplinary incidents more than one year old, and (2) failing to detail the facts supporting suspension and termination in their respective notice letters. Opp. 15. With regard to the first CBA

---

[7] On the other hand, the CBA prohibits First Transit from considering performance issues older than 12 months in making a disciplinary or employment decision.

violation, Badia now asserts that he did not rely on incidents from past years in deciding to terminate Solano.  And even assuming Badia did consider historical performance issues, First Transit's violation of this CBA provision cannot be reasonably construed as evidence of pretext.  Rather, it would support defendant's assertion that Solano was dismissed based on his performance issues, and not for retaliatory purposes.

In regards to the second alleged CBA violation, I initially note that the February 11 suspension letter was indeed short and did not mention specific facts supporting First Transit's decision to suspend Solano.  Docket No. 68-26.  But the letter explained that Solano was being suspended pending investigation of "this and other incidents" connected with his performance.  Given that First Transit held a special hearing that same day, with Solano present, to discuss the incident on February 10, the letter's lack of factual detail is hardly a material violation of the CBA.  As to the February 18 termination letter, it states that he was being terminated on the basis of insubordination, and details the dates and circumstances surrounding that incident.  Docket No. 68-27.  Plainly, the termination notice includes facts supporting First Transit's decision to terminate his employment.  While an employer's violation of its own policies may be probative of pretext, *Collazo*, 617 F.3d at 52, on these facts, First Transit's slight failure to abide by a detailed provision of the CBA does not support an inference of pretext.

Lastly, Solano refers to the Exceptional Achievement and Performance Award that he was given in October 2010 as evidence that First Transit was fully satisfied with his work performance.  The award, however, was in recognition of his nine years of safe operation (Docket No. 55-14), and came before the string of incidents in January and February 2011 that culminated in his dismissal.  The award may be evidence that Solano was a safe bus driver, but it by no means contradicts the reported insubordination and customer service incidents that underlie First Transit's termination decision.

Taking the record as a whole, I find that Solano has not introduced sufficient evidence for a reasonable jury to find that First Transit's proffered rationale for

terminating Solano is pretext cloaking retaliatory intent. Thus, First Transit is entitled to summary judgment on Solano's Title VII retaliation claim.

### D.     But-for Causation Requirement

Summary judgment is also warranted because Solano cannot show that his protected activity is the but-for cause of his termination. In *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, the Supreme Court clarified that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test" for discrimination claims. 133 S. Ct. at 2533. While *Nassar*'s "but-for causation" requirement "does not require proof that retaliation was the only cause of the employer's action," the plaintiff must show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). "The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Id.* at 846 n.5. But given the right set of facts, the court may grant summary judgment where it finds that "no reasonable factfinder could reach the conclusion that [the] but-for standard has been met." *See Ponte*, 741 F.3d at 321 (upholding grant of summary judgment for failure to raise a genuine issue as to but-for causation).

In this case, First Transit had ample justification to terminate Solano's employment, based on his poor work performance in the months immediately prior to his dismissal. And while his filing of the ADU complaint may have factored into Badia's decision making process, given the paucity of evidence regarding retaliatory intent, no reasonable jury could conclude that First Transit decided to terminate Solano "because of" his protected activity. Therefore, summary judgment should be granted for First Transit on this basis as well.

### III.　Law 115 Retaliation Claim

Solano in his complaint also asserts a claim under the "local counterpart to Title VII."[8] However, as discussed in this court's opinion dated July 2, 2013, Docket No. 29, this second cause of action appears to be an employment discrimination claim for sharing testimony under Law No. 115 of December 20, 1991 ("Law 115"), 29 L.P.R.A. § 194a. Law 115 is largely identical in scope to Title VII retaliation claims. *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 809 (1st Cir. 2006). The Puerto Rico statute prohibits employers from discriminating against employees for "offer[ing] or attempt[ing] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." § 194a(a). "Employees must establish they engaged in activity protected under Law 115 and then suffered discrimination at work." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 433 (1st Cir. 2010). Because Solano has failed to raise a genuine issue of material fact on his Title VII retaliation claim, his Law 115 claim must similarly be dismissed. *See id.* (upholding district court's dismissal of Law 115 claim where jury rejected plaintiff's claim of retaliation under federal law).

### IV.　Supplemental Jurisdiction Over Law 80 Claim

All that remains is Solano's wrongful termination claim under Puerto Rico Law No. 80, 29 L.P.R.A. § 185a. The parties do not dispute that the court has the power to exercise supplemental jurisdiction over this local law claim. *See Futura Dev. of P.R., Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 13 (1st Cir. 1998); 28 U.S.C. § 1367(a) (in a federal question case, court may assert supplemental jurisdiction over state law claims where those claims arise from the same "nucleus of operative facts"). However, once all claims conferring original jurisdiction have been dismissed, a district court has discretion, weighing "concerns of comity, judicial economy, convenience, and

---

[8] I note that the plaintiff's opposition brief still has not identified the precise statute that it seeks to invoke for this claim. Opp. 1.

fairness," in deciding whether to retain supplemental jurisdiction over other claims. 28 U.S.C. § 1367(c); *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citations omitted). Pretrial dismissal of federal-question claims usually counsels dismissal of state-law claims without prejudice, but these factors must be weighed in a "pragmatic and case-specific" way. *Id.* For instance, declining to exercise supplemental jurisdiction over a closely-related local law claim "four days before trial was scheduled to begin, when the action had been pending in federal court for more than six years, the summary judgment record had been complete for nearly a year, and the parties were almost completely prepared for trial," constituted an abuse of discretion. *Id.*

The question is a close one, but on the facts before me, I find that the concerns of judicial economy, convenience, and fairness counsel in favor of exercising supplemental jurisdiction. First, I note that Solano's Law 80 claim appears to be closely related to his Title VII retaliation claim. Law 80 "requires employers to compensate employees who are discharged without just cause." *Baltodano v. Merck, Sharp & Dohme (I.A.) Corp.*, 637 F.3d 38, 41–42 (1st Cir. 2011). Retaliation does not constitute just cause, while an "employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment" provide good cause for dismissal. 29 L.P.R.A. § 185b. An employee who establishes that he was discharged shifts the burden of persuasion to the employer to prove that the discharge was justified. *Baltodano*, 637 F.3d at 42. The burden then shifts back to the employee to show a lack of just cause. *Id.*

Like the situation in *Redondo*, with less than three weeks before the scheduled trial date, the parties are presumably diligently preparing themselves for trial. Dismissal of the Law 80 claim at this time would force the parties to start over in local court and impose seemingly unnecessary burdens. Documents and filings prepared in English may need to be translated into Spanish, as Puerto Rico courts operate in Spanish. The parties may seek to re-open discovery, and resolution of this dispute would only be further

delayed. Thus, in the interest of judicial economy and fairness, the court should exercise supplemental jurisdiction over this remaining cause of action.

First Transit also requests dismissal pursuant to the *Colorado River* abstention doctrine, referring to the arbitration proceedings initiated pursuant to the CBA. However, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The presence of parallel litigation in state court will not in and of itself merit abstention—only in special circumstances, will the pendency of a similar action in state court merit federal abstention based on "considerations of wise judicial administration" that counsel against duplicative lawsuits. *Bacardi Int'l Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 14 (1st Cir. 2013) (quotations omitted). Abstention under *Colorado River* is "to be approached with the most caution, with only the clearest of justifications warranting dismissal." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (internal quotations omitted). The court must employ an "exceptional circumstances test," considering a non-exclusive list of factors.[9] *Id.* at 27–28. "The decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Rodriguez-Pagan*, 597 F.3d at 28 (citation and quotation omitted). I first note that it is unclear whether the pending arbitration constitutes a parallel state proceeding for purposes of *Colorado River*. *See, e.g.*, *Ambrose v. New England Ass'n of Sch. & Colls., Inc.*, 100 F. Supp. 2d 48, 50 (D. Me. 2000) (declining to apply exception circumstances

---

[9] The factors are: (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

test because "there exists no parallel state court action"). Moreover, for the very same reasons of judicial efficiency and fairness, and considering the heavy presumption in favor of exercising jurisdiction where properly obtained, I find that abstention under *Colorado River* is unwarranted.

## CONCLUSION

For the foregoing reasons, defendant's summary judgment motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Title VII and Law 115 claims are hereby dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of July, 2014.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge